GARRETT SCHMOELLER,

     Plaintiff,

    v.

VILLAGE OF ISLAND LAKE, et al.,

     Defendants.

No. 15 CV 10617

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Garrett Schmoeller worked as a police officer for the Village of Island Lake, and with the approval of the Village's Board of Fire and Police Commissioners, attained the rank of sergeant. Over three years later, the Village and its Board cited procedural defects in his promotion. They invited Schmoeller and several others to reapply for the sergeant role, but later passed him over for someone less qualified. That individual had political ties to the Village's mayor, defendant Charles Amrich, which Schmoeller believes placed him at an unfair disadvantage during the hiring process.

Schmoeller filed this action against the Village, Amrich, and three Board commissioners, in their individual capacities, claiming that they violated his rights under the First and Fourteenth Amendments. He seeks both compensatory and punitive damages under 42 U.S.C. § 1983 for lost salary and employment benefits and for emotional distress. He also seeks injunctive relief in the form of a retroactive promotion to sergeant. Defendants move to dismiss the complaint in its

entirety for failure to state a claim, or alternatively, for a more definite statement. For the following reasons, defendants' motion is granted in part without prejudice, and denied in part.

## I.    Legal Standards

A complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *see Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 711 (7th Cir. 2015). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). But under this plausibility standard, a court cannot disregard factual allegations simply because they seem unlikely. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

"The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may exclude documents attached to a motion to dismiss, unless "they are referred to in the plaintiff's complaint and are *central* to his claim." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)). But public records are

subject to judicial notice and may be considered even if not mentioned in the complaint. *See, e.g.*, *White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016).

## II.   Background

Plaintiff Garrett Schmoeller worked as a police officer for the Village of Island Lake in Illinois. [1] ¶ 2.[1] He started out as a part-time officer in 2001 and became a full-time officer around May 2004. [1] ¶ 8. In February 2009, he passed his sergeant's exam and, with the recommendation of the police chief, the Board of Fire and Police Commissioners approved his appointment as a probationary sergeant, effective August 11, 2011. [1] ¶ 9.

Around July 2014, recently appointed commissioner Debra Jenkins, a defendant in this action, said that Schmoeller's promotion was procedurally improper. [1] ¶ 12. The Village invited Schmoeller and two other probationary sergeants to retake the sergeant's exam and reapply for the position. [1] ¶ 12. Later that year, Schmoeller, along with one of the two other probationary sergeants and others, retook and passed the written examination. [1] ¶ 14. The Village did not give Schmoeller the date of the oral component of the examination, but he learned it from the other probationary sergeant. [1] ¶ 15. Although he did not receive written confirmation of his test results, Schmoeller was told that he ranked second on the sergeant's eligibility list. [1] ¶ 17. On December 11, 2014, two vacancies opened up for the sergeant's position. [1] ¶ 18. Eleven days later, Jenkins and two other commissioners on the Board, defendants Thomas Martin and Arnold Epstein, voted

---

[1] Bracketed numbers refer to entries on the district court docket.

to formally appoint as sergeant an individual who ranked lower than Schmoeller on the eligibility list. [1] ¶ 20.

Schmoeller alleges that the promoted individual was less qualified than he and had a record of poor performance, and that his promotion resulted from his relationship with defendant Mayor Charles Amrich and Amrich's political allies on the Board of Trustees. [1] ¶¶ 21–22, 30. The promoted officer had less seniority and experience than Schmoeller, had been terminated as a police officer in 2010 for making false statements, failing to support his colleagues, and for insubordination, and had pleaded guilty to misdemeanor domestic battery. [1] ¶ 21. After his reinstatement to the police department in July 2013 (based on a vote by Amrich and the Board of Trustees), he was disciplined on several occasions. [1] ¶ 21. But the individual had actively campaigned for Amrich, who had appointed Jenkins, Martin, and Epstein to the Board after his election, and for the three Trustees who were on Amrich's slate. [1] ¶¶ 19, 23. Commissioners Jenkins, Martin, and Epstein based their decision to promote him over Schmoeller on their shared loyalty to the mayor rather than any objective criteria. [1] ¶ 30.

This is not the only example of political patronage on the Village's hiring decisions after the 2013 election. Schmoeller alleges that the Village has a practice of rewarding those who supported, either financially or otherwise, the election campaigns of Amrich or his political allies on the Board of Trustees. [1] ¶ 31. For example, Amrich appointed Jenkins to the Board after she served as his campaign's treasurer. [1] ¶ 27. Likewise, he appointed Martin and Epstein to the Board after

they provided support during his mayoral campaign. [1] ¶¶ 28–29. Prior to Jenkins's appointment, Amrich had appointed another commissioner who had campaigned for him and who had donated $200 to his campaign. [1] ¶ 25. That commissioner eventually resigned, due in part to allegations that she had a close relationship with the promoted police officer (but not until after giving him extra time to study for the sergeant's exam). [1] ¶¶ 25–26. After Amrich's 2013 election, the police department stopped using a towing company that had tried to keep Amrich off the ballot, and began using a towing company whose owner had donated money to his campaign. [1] ¶ 35. And, in addition to the promoted individual, Amrich and his political allies on the Village's Board of Trustees also voted to reinstate Amrich's former campaign manager as a police officer, after that officer had resigned amid an investigation into alleged misconduct. [1] ¶ 32.

III.  **Analysis**

A.  **Fourteenth Amendment Claim**

The complaint alleges that defendants violated Schmoeller's rights under both the First and Fourteenth Amendments to be free of political affiliation and of having to make political donations, and that he was deprived of his right to be fairly and equally considered for a promotion. Defendants note that the complaint's first paragraph presents two grounds for recovery: (1) a violation of Schmoeller's right to be free of political affiliations; and (2) a violation of his rights when defendants promoted another individual over him based on that individual's political affiliation

and activities.[2] Defendants suggest that one of the complaint's final paragraphs narrows Schmoeller's claims to just one of political nonaffiliation under the First Amendment, in part because the complaint does not list separate counts.[3]

Schmoeller does not outline in detail the legal theory behind his claims, and he does not have to. "[I]t is factual allegations, not legal theories, that must be pleaded in a complaint." *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014). But failure to respond to an argument typically results in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Schmoeller makes no mention in his response brief of the Fourteenth Amendment, due process rights, equal protection, or anything other than a First Amendment political nonaffiliation claim. Because he does not respond to defendants' concerns or clarify his grounds for relief, the complaint will be read as one seeking relief under the First Amendment for a violation of Schmoeller's right of association. The reference to the Fourteenth Amendment is understood to be a reference to the application of the First Amendment to the states by way of the Fourteenth Amendment.

---

[2] The complaint's first paragraph states: "This is an action for violations of the Plaintiff's rights to be free of political affiliation, and for violations of Plaintiff's rights when Defendants promoted another individual over Plaintiff based on that individual's political affiliation and political activities in violation of the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983." [1] ¶ 1.

[3] This paragraph reads: "The actions of the Defendant VILLAGE and the individual Defendants violated 42 U.S.C. §1983 and Plaintiff's rights under the First and Fourteenth Amendments to be free of political association or political affiliation, and to be free of having to make political donations. Though Plaintiff was exceptionally well qualified for the sergeant position, he was deprived of his right to be fairly and equally considered as a candidate based on Defendants' actions." [1] ¶ 36.

### B.     First Amendment Claim

"The First Amendment prohibits discrimination against public employees based on the employees' political association." *Bisluk v. Hamer*, 800 F.3d 928, 933 (7th Cir. 2015). To state a claim for a violation of this First Amendment right, a plaintiff must allege that 1) his conduct was constitutionally protected; and 2) his protected conduct was at least a motivating factor in the challenged employment action.[4] *Id.*; *see also Heffernan v. City of Paterson, New Jersey*, 136 S.Ct. 1412 (2016).

Defendants concede that the first element is adequately alleged. "It is undisputed that political nonaffiliation is a right protected under the first amendment." *Hermes v. Hein*, 742 F.2d 350, 354 n.3 (7th Cir. 1984). "[P]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990). But defendants dispute whether Schmoeller alleges causation as to the individual commissioners. Defendants also argue that Schmoeller fails to state a claim under § 1983 that would establish municipal liability for the Village or individual liability for Amrich.

---

[4] The parties dispute whether the protected activity must be alleged as a necessary condition for the defendants' action. The Seventh Circuit has held that on summary judgment, the plaintiff has the burden to show that his speech was at least a motivating factor, and the defendant may rebut that evidence by showing that it "would have taken the same action even if the protected conduct had not occurred." *Bisluk v. Hamer*, 800 F.3d 928, 934 (7th Cir. 2015) (quoting *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013)). As a result, at the motion to dismiss stage, Schmoeller need only allege that his protected conduct was a motivating factor behind defendants' action.

1. *The Commissioners*

"[T]he threshold question is whether the defendants even knew about the political activities." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). Defendants argue that Schmoeller fails to state a claim because he does not allege that defendants knew of his own political affiliation. Defendants are correct that Schmoeller does not explicitly allege defendants' awareness of his own political leanings. But the complaint clearly alleges that another officer was promoted only because that officer was involved in Amrich's and the Trustees' election campaigns—campaigns that at least one of the commissioner defendants also worked on. It is reasonable to infer from the allegations of the complaint that Schmoeller was not involved in those campaigns, and that those who were involved would be aware of that.[5]

Defendants also point out that the Board of Fire and Police Commissioners may choose to promote anyone from the top three eligible candidates, so the promotion of someone who was ranked lower than Schmoeller on the eligibility list is not necessarily inappropriate, so long as that person is among the top three candidates. *See* 65 ILCS 5/10-2.1-15. Schmoeller does not address this, but even if defendants were not constrained to the ranking order of the eligibility list when awarding promotions, it would still violate an individual's rights under the First

---

[5] Defendants provide an exhibit—suitable for judicial notice—showing that just over 800 people voted in the 2013 mayoral election. *See* [15] at 15. It is unknown how many people actively campaigned for Amrich in this election, but given the low number of voters, one can reasonably infer that individual campaign workers and volunteers would be aware of each other's existence.

Amendment if the promotion were awarded on the basis of the candidates' political affiliations. Since an allegation to that effect serves as the basis for the complaint, it survives the motion to dismiss.

Defendants make a number of arguments relating to the procedures the commissioners and others followed which suggest a desire to treat Schmoeller fairly. For example, they claim that the Board waited until Schmoeller and the others took the sergeant's exam before announcing the vacancy (thereby ensuring that Schmoeller would be eligible), that the ranking order alleged in the complaint is inaccurate, and that Schmoeller's ranking resulted from discretionary points awarded by the police chief, who had been appointed by Amrich. But even if these arguments were based solely on allegations from the complaint or public records and could be considered on a motion to dismiss, they are not inconsistent with the allegation that the promotion was based on the candidates' political affiliation. Defendants could have given Schmoeller the benefit of certain procedures, while also putting a thumb on the scale to favor a political ally in the end.

Finally, defendants argue that the complaint fails to give them sufficient notice of Schmoeller's claim and the underlying factual allegations, comparing it to the complaint in *Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998). In *Kyle*, the plaintiff alleged that he had been fired for "political and advocacy reasons," and that the defendants had considered his political and advocacy activities "adverse to their political interests." *Id.* at 454. The Seventh Circuit affirmed dismissal, because the plaintiff did not identify the speech, political association, protected conduct, or

any specific activity that caused the defendants to terminate him, effectively "omitt[ing] the gravamen of his complaint." *Id.* at 457. *Kyle* does not control here because, as defendants concede, Schmoeller does allege that he engaged in protected conduct—nonaffiliation with Amrich and his political allies—and that conduct caused the commissioners to deny him a promotion. Unlike the complaint in *Kyle*, Schmoeller's complaint provides defendants with fair notice of the operational facts sufficient to survive dismissal.

Therefore, the motion to dismiss is denied as to the commissioner defendants.

### 2. *Village of Island Lake*

A local government unit like the Village can be held liable for a constitutional injury under § 1983, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), but only if a plaintiff can establish "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012). The plaintiff must also show that the policy or custom is the "moving force" behind the deprivation of constitutional rights. *Id.* at 833 (quoting *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir.2007)).

Defendants argue that the Village is not a proper defendant as the authority to hire or promote police officers rests entirely with the Board of Fire and Police Commissioners. *See* 65 ILCS 5/10-2.1-4. Schmoeller disputes this, alleging that

Amrich and the Board of Trustees can also make appointments to the police department. Neither party mentions the fact that, if the Board of Fire and Police Commissioners has final policymaking authority in awarding promotions, and if the Board is alleged to have caused Schmoeller's injury, then the complaint states a *Monell* claim against the Village.

The parties instead focus on whether Schmoeller adequately alleges an express policy or a practice that constitutes the moving force behind his injury. Defendants claim that he does not, and Schmoeller counters that he explicitly alleges a widespread practice of showing favoritism to those who supported Amrich and his affiliates that could sustain a claim against the Village. Schmoeller alleges as evidence of this practice that Amrich appointed Jenkins, Martin, Epstein, and one other commissioner to the Board based on their active political support for Amrich and his political allies. And Schmoeller alleges that in 2013, Amrich voted to reinstate two police officers—the promoted officer, who had actively campaigned for Amrich and his allies, and Amrich's former campaign manager—based solely on their political support. While Schmoeller's allegations do not include other instances of the Board disregarding testing procedures when considering candidates for promotion (or any other Board decisions at all), they do describe a general pattern in the Village of basing hiring decisions on political affiliation.

The pattern Schmoeller identifies may not be of much value in a later proceeding. It may be that Schmoeller's allegations regarding Amrich's Board appointments constitute examples of permissible political patronage. For example,

the commissioners' political affiliation may be necessary for them to be effective in their roles. *See Embry v. City of Calumet City, Ill.*, 701 F.3d 231, 235 (7th Cir. 2012) (quoting *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 977 (7th Cir.2000)) ("Certain governmental positions, though, require a 'heightened need for trust and confidence that ... subordinates are guided by the same political compass and will exercise their discretion in a manner consistent with their shared political agenda.'"). If Schmoeller can prove a widespread practice of patronage, he still must prove that it constitutes the moving force behind his constitutional deprivation, and without more, permissible patronage may not provide the link to impermissible patronage. However, the allegations in the complaint contain sufficient information to provide defendants with fair notice of Schmoeller's claim that the Village's practice of political patronage violated his First Amendment rights.

Defendants' motion to dismiss with respect to the Village is therefore denied.

### 3. The Mayor

A § 1983 lawsuit against an individual defendant requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). "Although direct participation is not necessary, there must at least be a showing that the [individual defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Id.*

Defendants argue that Amrich is an improper defendant because only the Board of Fire and Police Commissioners had authority to award promotions, and

that Amrich is not alleged to have any knowledge of or direct involvement in the Board's decision. They further argue that, even if Amrich were aware of the vacancy, and even if he did recommend that another officer be promoted rather than Schmoeller, his recommendation alone would not subject him to liability.

Schmoeller disputes defendants' claim that Amrich lacked any authority, and argues that Amrich can be held liable because he acquiesced to Schmoeller's constitutional deprivation. Schmoeller does allege that Amrich's appointments to the Board were based on the appointees' political support, and that Amrich was effectively in control of the Board because he had the authority to remove those commissioners, but even in his response brief, Schmoeller falls short of alleging any direct involvement by Amrich in the Board's decision, or even awareness of that decision. Instead, he argues that Amrich made his preference for the promoted officer known in 2013, when he voted with the Board of Trustees to reinstate that officer. Even in the light most favorable to Schmoeller, the allegations suggest at most that Amrich unwittingly influenced the Board in making its own, independent decision.

The motion to dismiss with respect to Amrich is therefore granted without prejudice.

## C. More Definitive Statement

Defendants move in the alternative for a more definitive statement as to Schmoeller's claim pursuant to Rule 12(e). Defendant claims confusion as to whether Schmoeller brings a claim for discrimination based on political

nonaffiliation or a claim for retaliation against protected speech. The complaint certainly could be clearer, but as discussed above, its factual allegations provide an adequate outline of Schmoeller's theory of relief—he was not promoted because political affiliation was the critical factor in the decision. Defendants' Rule 12(e) motion is denied.

## IV.    Conclusion

Defendants' motion to dismiss, [15], is granted in part and denied in part. Schmoeller states a claim for a violation of his First Amendment right of political nonaffiliation against Jenkins, Martin, Epstein, and the Village. The claim against Amrich is dismissed without prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date: 6/15/16